IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FREESE AND NICHOLS, INC. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:22-CV-0051 |
| | § | |
| ENVIGO RMS HOLDING CORP. | § | |
| | | |
| ENVIGO RMS HOLDING CORP. AND | § | |
| ENVIGO GLOBAL SERVICES, INC. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:22-CV-0051 |
| | § | |
| FREESE AND NICHOLS, INC. | § | |

---

## AFFIDAVIT OF JASON COCKLIN

---

| | |
|---|---|
| State of Texas | § |
| | § |
| County of Tarrant | § |

BEFORE ME, the undersigned authority, on this day appeared Jason Cocklin, PE. who is personally known to me and who, being sworn on oath to tell the truth, testified under penalty of perjury as follows:

1. "My name is Jason Cocklin. I am over the age of eighteen (18) years, have never been convicted of a felony or a crime of moral turpitude, and am competent to make this Affidavit. I have personal knowledge of the facts contained herein, and the facts are true and correct.

2. "I joined Freese and Nichols, Inc. ("FNI") in 2009. Prior to this, I attended Texas A&M University where I obtained a Bachelor of Science in Civil Engineering in 2007 and a Master of Engineering in Civil Engineering in 2008. I became licensed as a professional engineer with the Texas Board of Professional Engineers and Land Surveyors in 2012.

3. "As a professional engineer, I am focused on water and wastewater treatment, project management, and facility planning to help owners improve their communities and enterprises. I'm currently managing projects involving raw water transmission, wastewater treatment, permitting, and brackish groundwater and seawater desalination. My experience includes conventional and innovative process

design, capacity analyses, hydraulic modeling, disinfection, disinfection byproducts removal and on-site construction services.

4. "At the request of FNI's outside counsel, I have reviewed the documents filed in connection with this lawsuit including but not limited to Envigo's Original Petition filed in State Court, as well as the Motion to dismiss and its associated exhibits.

5. "I was the project manager for the project at issue in this lawsuit. Attached as **Exhibit A** to my affidavit, is a true and correct copy of the contract identified as a master professional services agreement dated April 1, 2015 between "FNI" and Covance Laboratories, Inc., who was later acquired by Envigo (hereinafter "MSA").

6. "The MSA included a master planning study and evaluation wherein FNI identified three potential development options to expand Envigo's waste facilities. "As a part of the MSA and on or about the Fall of 2015, Envigo installed, or directed its contractors to install, five Toshiba LF654 electromagnetic (mag) meter detectors with Toshiba LF620 converters.

7. "Following this, FNI collected totalizer data from the mag meters between October and December 2015. We now know, as of early-2020, that Envigo's meters read in tens of gallons and not gallons. Envigo never provided FNI any indication that its meters were off by an order of magnitude.

8. "Under the MSA, Envigo had an obligation to provide accurate data for the basis of the design, and breached that obligation, specifically including but not limited to Article 5(e) of Attachment A to the MSA.

9. "As a result, FNI has incurred significant costs for employee time spent on this project, which is contractually owed as an additional service under these agreements, and for loss of future work expected under the contact, as a direct result of the faulty data provided by Envigo.

10. "Under Article 5(d) of Attachment A to the MSA, Envigo is liable for the additional services rendered by FNI staff to find solutions for this error, and those services are to be billed on an hourly basis under Article 4 of Attachment A to the MSA. As of today, Freese and Nichols has incurred the following costs for which it seeks reimbursement:

    a. Jason Cocklin (at least 190 hours) – at least $43,490
    b. Will Allanach (at least 60 hours) – at least $9,930
    c. Leonard Ripley (at least 42 hours) – at least $10,983
    d. John New (at least 24 hours) – at least $6,276
    e. Larry Eckersley (at least 12 hours) – at least $3,138

       f.   Kendall King (at least 1 hour) – at least $262
       g.  David Jackson (at least 2 hours) – at least $523
       h.  Dhruv Deshmukh (at least 8 hours) – at least $1,228
       i.   David Bennett (at least 3 hours) – at least $785

11. "Additionally, I personally attended and participated in the mediation that was held on January 6, 2022. Before the mediation, Envigo provided FNI with a list of the damages for which it sought reimbursement. Those costs included $94,845 made payable to the engineering firm James Miertschin & Associates, Inc. for work which would have otherwise been performed under the MSA had Envigo not improperly terminated its contract with FNI for Envigo's own material breach.

Further Affiant sayeth not.

Jason Cocklin, P.E.

SWORN TO AND SUBSCRIBED BEFORE ME on the 24th day of March, 2022.

Notary Public, in and for
  the State of Texas

My commission expires: 7-17-2023

LISA BOGGS
ID# 1010308-7
Notary Public
STATE OF TEXAS
My Comm. Exp. 07-17-2023

# Exhibit A

# MASTER PROFESSIONAL SERVICES AGREEMENT

This Master Professional Services Agreement, ("Agreement"), is made as of the 1st day of April, 2015 the (Effective Date"), by and between COVANCE LABORATORIES, INC., having its principal place of business at 3301 Kinsman Boulevard, Madison, WI 53704, ("Covance"), and FREESE & NICHOLS, having its principal place of business at 800 N. Shoreline Blvd., suite 1600N, Corpus Christi, TX 78401, ("Supplier").

1. **Services –** Supplier shall provide professional services relating to Waste Water Engineering, ("Services").  Services to be performed under the Agreement will be mutually defined by Covance and Supplier and the scope and attributes of each project shall be set forth in a separate attachment to this Agreement ("Scope of Work"). Each Scope of Work shall be signed by a duly authorized representative of Covance and Supplier.  The Scope of Work document shall reference this Agreement and will include as appropriate: the duration of the project, description of work to be performed, number of hours, number of people, job titles, firm or estimated costs related to tasks, expenses if appropriate, etc.  A Covance purchase order will be issued for each approved Scope of Work.

2. **Agreement Period** - This Agreement shall be effective as of date of signature and are the terms and conditions for all Services provided by Supplier to Covance from that date forward or until this Agreement is amended in writing by authorized representatives of both parties or until terminated pursuant to Section 17 below.

3. **Rate of Compensation** - Compensation for Services will be as stated in the Scope of Work and this shall be reflected in the associated Purchase Order defined in Section 1 above. Travel expenses that Covance approves shall be reimbursed in accordance with the Reimbursable Expenses policy, incorporated herein as Attachment B. Travel expenses must be included in the Scope of Work to be considered as a reimbursable.  Compensation rates, "not to exceed" terms, etc., shall not be modified except by mutual written amendment to this Agreement.  During the term of this Agreement and for a period of three (3) years after final payment by Covance, all of Supplier's records relating to Services performed and amounts invoiced by Supplier under this Agreement shall be open to inspection and subject to audit and reproduction by Covance or its authorized agent or representative.

4. **Payment** - Invoices are to be mailed to Covance Accounts Payable, PO Box 4043, Danville, IL 61834 or emailed to CDSAccountsPayable@covance.com. The appropriate Purchase Order Number **must** be included on all invoices.  Invoices for services may be billed **monthly or upon completion of the project**. Invoices shall be payable forty-five (45) days after receipt; however, in the event Covance has questions concerning any invoiced item, payment of that item shall be made only after satisfactory resolution of those questions.  Covance does not pay any late fees added to invoices.

5.    **Use of Information** - All information provided to Supplier by Covance or its clients is understood to be for official use only and may not be disclosed to other parties without the express written permission of Covance.

    A.  **Confidentiality** - In the course of the performance of this Agreement, Supplier may acquire information that Covance deems confidential, including trade secrets and unpublished technical information and data to which Covance (or companies affiliated with Covance) has proprietary rights.  Confidential Information shall also include, but is not limited to, information of a third party which Covance is under an obligation to maintain in confidence.  All such information is referred to hereinafter as "Confidential Information". Supplier shall retain such Confidential Information in strict confidence and shall not use it for the benefit of Supplier or others or communicate it to others without Covance's prior written agreement. Supplier shall not take photographs of any portion of Covance's facilities or duplicate any documents, or permit others to do so, without the prior written approval of Covance.  Documents made available to Supplier by Covance shall remain the property of Covance and shall be returned along with all copies thereof to Covance upon request, upon termination of this Agreement, or upon completion of the Services, whichever is earliest.  Nothing in this Agreement shall prevent the communication to others of any Confidential Information which Supplier can show:

        **(i)**  was known to it or its representatives prior to its receipt hereunder, as shown by their prior written records;

        **(ii)**  was lawfully obtained by Supplier or its representative other than directly or indirectly from Covance;

        **(iii)** became public knowledge through no fault of Supplier; or

        **(iv)**  is required to be disclosed by Supplier by law.

    B.  **Nondisclosure** - Supplier shall not disclose any information about this Agreement, including its existence, without the prior written consent of Covance.

    C.  **Supplier and Employees** - Supplier shall require all of its employees and consultants who may have access to Confidential Information to execute a confidentiality and nondisclosure agreement in substantially the same form as set forth in this Agreement prior to the commencement of any Services.

6.    **Patents and Inventions -** Covance or its client will retain the entire right, title and interest in or to inventions relating directly to the services to be performed under the terms of this Agreement or which is dependent upon any confidential matter made available to Supplier.  All patentable ideas or inventions of interest to Covance or its client relating to services performed under this Agreement or dependent upon any confidential matter made available to Supplier shall be brought to Covance's immediate attention. Supplier will cooperate and assist Covance from time to time, in any manner reasonably requested by Covance, in obtaining title or ownership therein or evidence thereof. Supplier shall not divulge, disclose or communicate such patentable ideas or inventions to any third party in any manner, directly or indirectly.  Supplier will not use for its own benefit or purposes, or for the benefit or purposes of any third party, or permit or assist, by acquiescence or otherwise, any third party to use in any manner, directly or indirectly, such ideas or inventions, except such idea or invention as is at the time generally known to the public and which did not become generally known through the breach of any provision hereof.

A.  **Ownership of Services Performed** - All service products developed by Supplier in performing this Agreement shall be deemed original creations made for Covance and shall not infringe any patent, copyright or other proprietary rights of a third party. The work product of Supplier is a work for hire made for Covance and shall be the property of Covance, with Covance owning the copyright and all other rights with respect thereto.  In the event any part of the work product does not qualify as a work for hire, Supplier hereby assigns the entire copyright and all other rights to the work product to Covance.  All originals and copies of such work product shall be delivered to Covance upon request or at the termination of this Agreement or any projects under this Agreement, whichever is earlier. Supplier agrees to execute, without further consideration, assignments or other documents that may be necessary to establish Covance's ownership of such work product.

B.  **Infringement Indemnification** - Supplier agrees to defend or settle, at its expense, any claim against Covance which alleges that the work product infringes any patent, copyright or other proprietary right of a third party and will pay all costs and damages finally awarded against Covance in such claim and, at Supplier's expense, assist in the defense of such claim.  If, in the discretion of Covance, Supplier fails to promptly and timely commence such defense or thereafter to diligently and continuously prosecute such defense, Covance shall be entitled to undertake such defense, including settlement, and Supplier shall reimburse Covance for all expenses incurred by Covance in such defense or settlement, including reasonable attorney fees, which shall be in addition to Supplier's obligation to pay all costs and damages finally awarded against Covance.  In any action hereunder, if the work product is held to infringe on any patent or other proprietary rights of any third party or Covance's use of the work product is enjoined, Supplier shall, at its sole cost (i) procure for Covance the rights to continue using said work product; (ii) modify or replace it so that it is non-infringing; or (iii) remove the infringing work product and refund the full expense paid by Covance allocable to the infringing work product.

7.  **Publications** - Covance reserves the right to determine the authorship for initial publications relating to Services performed under the terms of this Agreement or dependent upon Confidential Information made available to Supplier.  No publication may be made without the prior written approval of Covance.

8.  **Independent Contractor** - In performing Services hereunder, Supplier is an independent contractor and not an agent or employee of Covance.  As such, Supplier does not have the right or power to enter into any contract or commitment on behalf of Covance unless specifically authorized to do so in writing.

9.  **Personnel** - Supplier represents that it has, or will secure at its own expense, all necessary personnel required to perform Services under this Agreement. All persons employed by Supplier in the performance of the Services are employees or agents of Supplier. Supplier shall carry such employees on the payrolls of Supplier and make all required payments to State, Federal and Local authorities covering payroll taxes and any other payments relating to such persons' employment. Such personnel shall not be employees of nor have any contractual relations with Covance.

All of the Services required hereunder shall be performed by Supplier or under its supervision, and all personnel engaged in performing the services shall be fully qualified and, if required, authorized or permitted under state and local law to perform such Services.

Supplier warrants that all Services shall be performed by skilled and competent personnel to the highest standard in the field.

10.   **Compliance with Laws** - Supplier shall comply with all Federal, State, and Local laws, ordinances, rules, and regulations in the performance of Services. Supplier shall defend and hold Covance harmless from any loss, damage, or costs arising from or caused by any actual or alleged violation of any Federal, State, or Local law, ordinance, rule or regulation.

If applicable to Company's Services or provision of goods hereunder, Company represents and warrants that in providing the goods and/or Services specified herein, Company will also comply with the following laws, regulations, and executive orders:

1.   Executive Order 11246: EEO clause published at 41 CFR 60-1.4(a)
2.   Executive Order 13465 (Employment Eligibility Verification); 73 FR 67704
3.   Executive Order 13496 (Employee Rights Under National Labor Relations Act): 29 CFR 471, Appendix A to Subpart A
4.   **This contractor and subcontractor shall abide by the requirements of 41 CFR §§ 60-300.5(a) and 60-741.5(a). These regulations prohibit discrimination against qualified individuals on the basis of protected veteran status or disability, and require affirmative action by covered prime contractors and subcontractors to employ and advance in employment qualified protected veterans and individuals with disabilities.**

11.   **Security** - Personnel of Supplier shall observe the facilities access and security measures required by Covance.  Covance reserves the right to impose other security requirements, as Covance may from time to time deem necessary.

12.   **Assignment** - Supplier may not assign or transfer this agreement or any rights or obligations under it whether by operation of law or otherwise without the prior written consent of Covance.

13.   **Succession** - This Agreement shall be binding on the parties hereto and their directors, officers, employees, agents, successors and assigns (provided assignment is permitted pursuant to Section 12).  All obligations contained herein which require performance after termination, shall survive termination.

14.   **Sub-contracts** - Supplier shall not sub-contract any of the Services contemplated to be performed by Supplier under this Agreement without the written consent of Covance.  If such written consent is granted, Supplier shall, if requested, furnish copies of all sub-contracts to Covance.

15.   **Suspension and Force Majeure** – All reasonable effort will be made by Covance to carry out the terms of the Agreement but Covance shall not be responsible for any delay due to or any loss or damage occasioned by any cause arising from or attributable to acts, events, omissions, or accidents beyond reasonable control of Covance including, but not limited to acts of God, strikes,

lockouts, shortage of labor or any other labor trouble, shortage of power, materials, malicious damage or obligatory voluntary compliance with any request order or regulation of any person having or appearing to have authority in that regard whether for defense or other national or local government purposes or otherwise.  In any such case the order shall be suspended during such delay and shall again become operative upon the termination of such cause provided that, to meet any altered circumstances occasioned by such delay, Covance may make such variations to the terms of this order as are in its opinion reasonable.  If the Supplier does not agree thereto Covance may terminate this Agreement so far as it remains unperformed but shall pay the proportionate part of the quoted price for the Services performed.  In the event of any dispute as to the proper portion the matter shall be settled by Covance's Auditors who shall act as experts and not arbitrators and whose decisions shall be final and binding.

16.     **Notice of Legal Disputes** – Whenever an actual or potential legal dispute not directly related to this Agreement but which delays, or threatens to delay, the timely performance of this Agreement, Supplier shall immediately notify Covance in writing of all relevant information with respect to such dispute.

17.     **Termination** - Covance shall have the right at its absolute discretion to terminate this Agreement, in whole or in part, effective five (5) days following Covance's written notice to Supplier.  In the event of such cancellation, Covance shall have no obligation to Supplier except the obligation to pay all reasonable costs actually incurred by Supplier for Services rendered prior to the date of termination.  In no event shall Covance be obligated to pay an amount in excess of the amount set out in Covance's order for the services; advance payments being resolved accordingly.  If Covance's termination is the result of Supplier's default, Covance shall have no obligation to reimburse Supplier for any services performed by Supplier pursuant to Covance's order or any resulting contract.

18.     **Indemnification** – Supplier agrees to indemnify, and hold harmless Covance, its directors, officers, agents, and employees from and against any and all claims, demands, losses, and expenses, including reasonable attorney fees, arising out of suits, claims and demands by reason of injury or death of any person(s) or damage to any property which occurs in association with Services performed in a negligent manner by Supplier or its Sub-contractor, their agents or employees, except to the extent such claims or losses are due to the negligence of Covance, its employees, or agents.

19.     **Liability Insurance** - Supplier shall maintain insurance that will protect it from claims under pertinent workers' compensation acts and other employee benefit acts.  In addition, Supplier shall maintain in force during the performance of Services, liability insurance for not less than the following limits:

| | |
|---|---|
| Workmen's Compensation | Statutory |
| General Liability | |
| Bodily Injury (any one person) | $1,000,000 |
| Bodily Injury (any one occurrence) | $1,000,000 |
| Property Damage | $  500,000 |
| Professional Liability | $1,000,000 |
| Vehicle Liability | $1,000,000 |

Supplier shall furnish Covance certificates evidencing the insurance coverage prior to commencement of Services under this Agreement.  Each of the certificates shall provide that the coverage shall not be canceled until at least thirty (30) days after advance written notice has been given to Covance.

20. **Non-solicitation of Employees** - Neither Covance nor Supplier shall hire or seek to hire the employees of each other during the term of this Agreement or for a period of one (1) year after this Agreement or any project hereunder is terminated.  Additionally, neither Covance nor Supplier shall hire or seek to hire former employees of each other for a period of one (1) year after such employee has left the employment of the respective employer.

The only exception to this section of the Agreement is if either party has begun the hiring process for a specific individual within thirty (30) days prior to the effective date of this Agreement.

21. **No Interference** – For a period of two (2) years after this Agreement or any Project hereunder is terminated, Supplier shall not:
A. Take any action which would
(i) Interfere with the contractual relationship of Covance, its customers, suppliers, employees or others which relate to the business of Covance; or
(ii) Induce any employee or representative of Covance not to become or not to continue as an employee or representative of Covance.
B. Make remarks or take any other action which would tend to disparage or diminish the reputation of Covance.

22. **Disputes** - Any dispute arising under this Agreement, which is not disposed of, by agreement of the parties, shall be decided by a court of competent jurisdiction.  Pending settlement or final decision of any such dispute, Supplier shall proceed diligently with the performance of this Agreement in accordance with Covance's direction.

23. **Governing Law** - This Agreement shall be governed by and construed under the laws of the State of Wisconsin.

24. **Notices** – All notices pursuant to this Agreement shall be sent by certified mail, postage paid, and shall not be deemed to have been given until received by the other party.
Notice to Covance shall be sent to:

Covance Laboratories, Inc.          Freese and Nichols
ATTN:  John Fox                     ATTN:  John New
3301 Kinsman Blvd.                  800 N. Shoreline Blvd., Ste. 1600N
Madison, WI 53704                   Corpus Christi, TX 78401
John.fox@covance.com               JMN@freese.com

25. **Severability** - In the event any provision of this Agreement is held to be unenforceable or invalid, the remaining provisions of this Agreement will remain in full force and effect.

26. **Multiple Copies or Counterparts of Agreement** - The original and one or more copies of this Agreement may be executed by one or more of the parties hereto.  In such event, all such executed copies shall have the same force and effect as the executed original.

27. **Entire Agreement** - This Agreement and associated duly executed Scopes of Work constitutes the entire agreement and understanding between the parties and supersedes and replaces any and all prior or contemporaneous proposals, agreements, understandings, commitments or representations of any kind, whether written or oral, relating to the subject matter hereof or to the Services to be performed for a given Project.  Notwithstanding anything contained herein to the contrary, no subsequent modification, amendment, or addition to this Agreement shall be binding upon the parties unless reduced to writing and signed by the respective authorized officers of the parties.

28. **FDA or Sponsor Audit** – Supplier shall immediately notify Covance by telephone or facsimile if the Food and Drug Administration requests permission to and does inspect Supplier's facilities and research records during the term of this Agreement, and will promptly provide in writing to Covance copies of all materials, correspondence, statements, forms, and records which Supplier receives or obtains pursuant to the inspection.  Covance and/or Sponsor may also request to review and/or audit Supplier's facilities and research records in preparation for an FDA audit or as part of its internal quality assurance procedures.

29. **Noncompetition** – During the term of this Agreement, Supplier shall not in any State of the United States in which Covance or any Covance Affiliated now or hereafter conducts business:
   A. Enter into or engage in any Phase I, II, III, or IV clinical research business, which competes with the business hereafter, carried on by Covance or any Covance Affilitate.
   B. Solicit customers, business, patronage, or orders from , or perform other services for, any business including, without limitation, those which directly compete with the business of Covance or any Covance Affiliate; or
   C. Promote or assist, financially or otherwise, any person, firm, association, corporation or other entity, including, without limitation, those engaged in any business which competes with the current or future business of Covance or any Covance Affiliate; provided however the foregoing covenant shall be deemed not to have been violated solely by the ownership of equity securities of an entity which competes with a future business of Covance or any Covance Affiliate, to the extent that such securities are acquired prior to the date that Covance or any Covance Affiliate commence such future business.

30. **Safety & Storage** – For materials stored on-site at Covance, Supplier shall store any hazardous materials (cleaners, chemicals, etc.) in accordance with Covance's Environmental, Health & Safety (EHS) policy, provided to the supplier by the EHS site representative.  Each hazardous material shall be labeled by the supplier with applicable hazard information per OSHA and local hazard communication requirements. The supplier shall ensure material safety data sheets for each corresponding hazardous material are provided to Covance's EHS site representative prior to or at the time of delivery of all hazardous materials.  Covance's EHS site representative shall be notified by the supplier when hazardous chemicals are permanently removed from the site, so as to inform Covance to remove MSDS's when applicable.  Supplier shall ensure all their employees are trained, with regard to the functions of their employment, as they relate to the hazardous materials they utilize. All accidents and unauthorized releases of hazardous materials to the environment

shall be immediately reported to Covance's EHS site representative.  Supplier shall meet or exceed all local, state, and federal regulations pertaining to EHS (e.g. OSHA, local fire codes, EPA, etc.). Additional environmental, health & safety requirements may apply as deemed necessary by Covance's EHS site representative.

**WHEREFORE**, the parties hereto execute this Agreement, dated April 1, 2015, for reference purposes, and on the actual dates indicated below.


FREESE & NICHOLS, INC.                                COVANCE LABORATORIES, INC.
800 N. Shoreline Blvd., Ste. 1600N                    3301 Kinsman Blvd.
Corpus Christi, TX 78401                              Madison, WI 53704


By: _____                        By: _____
Name:   John New                                      Name:   John Fox
Title:   Vice President                               Title:   Senior Manager Global Sourcing
Date:   June 4, 2015                                  Date:   05 - JUN . 2015

## Master Professional Services Agreement
### Attachment A – Scope of Work dated June 3, 2015
Services for Wastewater System Evaluation at the Covance Alice, Texas Facility

1. **Term** - The term of this Attachment shall begin on the date of execution and be completed within the following project milestones schedule.

| MILESTONE/SUBMITTAL | DATE |
|---|---|
| Kickoff Meeting | April 8, 2015 |
| Sampling, Characterization, and Sludge Disposal | June - July |
| Geotechnical Field Exploration | July – Mid-August |
| Installation of Flow Meters and Data Collection | June - July |
| Geotechnical Laboratory Testing | End of August |
| Geotechnical Letter Report (DRAFT) | Early September |
| Geotechnical Letter Report (FINAL) | September |
| Wastewater Master Plan (DRAFT) | October |
| Wastewater Master Plan (FINAL) | 2 Weeks after Receipt of Comments |

2. **Description of Basic Services –**
   a) Coordinate sample collection, laboratory testing, and characterization of lagoon sludge.
   b) Assist in coordinating and facilitating regulatory meeting with TCEQ regarding sludge and filtrate disposal.
   c) Assist with identifying sludge removal and/or dewatering vendors and sludge/filtrate disposal alternatives.
   d) Geotechnical Exploration
      i) Review the Geologic Atlas of Texas and SCS soils maps.
      ii) FNI will select appropriate locations for exploratory borings within and adjacent to the ponds according the following:
      iii) Oxidation Ponds – 2 borings to a depth of 10 feet in each of the three ponds which results in 6 total borings and a total linear footage of 60 feet
      iv) Evaporation Ponds – 3 borings to a depth of 10 feet in each of the six ponds which results in 18 total borings and a total linear footage of 180 feet
      v) Potential Expansion Areas – 2 borings to a depth of 20 feet in each of the three pond areas which results in a total of 6 borings and a total linear footage of 120 feet.
      vi) A total of 30 borings will be drilled with a total linear footage of 360 feet.
      vii) It is our understanding that the drilling will be performed in three phases. Each of the three pond areas will be drained at separate times to allow for continued use of the system. This will result in three separate mobilizations of the drill rig and crew. It is not known how thick the

         sludge is within each pond and some drying time may be necessary to access the ponds. However, the drilling will be performed using an ATV drill rig to allow for access in the ponds.

    viii) Subsurface samples shall be obtained at 2.5-foot intervals within the upper 10 feet and at 5-foot intervals thereafter using 3-inch diameter Shelby tubes for cohesive soils and a 2-inch diameter split-spoon sampler in conjunction with the Standard Penetration Test (SPT) for non-cohesive soils.

    ix) Geotech work shall be completed at Covance's discretion on an as needed basis in accordance to the unit prices noted below.

  e) Review applicability of current TCEQ regulations
    i) Wastewater classification - CAFO or internal process stream?
    ii) Lagoon liner requirements (from §217 or §205)
    iii) Allowable lagoon evaporation rates (from §309)
    iv) Land application rules (TLAP permit?)
    v) Sludge disposal and applicability of biosolids rules

  f) Develop water usage rates by water supply area
    i) Install (turbine) water meters in all buildings
    ii) Install totalizing water meter on WWTP reuse line

  g) Estimate wastewater production by water supply area
    i) Apply estimated return ratio to each area's water demand
    ii) Temporary flow meters on lift station discharge lines
    (this will be possible only after the lagoons are cleaned and lift station pumps and force mains are functional)

  h) Develop wastewater disposal / reuse options
    i) Existing wastewater treatment plant & reuse
    ii) Expanded wastewater treatment plant & reuse
    iii) Required lagoon area & volume per unit flow
    iv) Determine capacity of existing lagoons
    (this will depend on geotech evaluation after dredging)
    v) Determine additional lagoon area &  volume needed
    vi) Determine land application requirements, if desired

  i) Develop costs for each option
    i) Capital costs
    ii) Operating costs - dredging, pumping, power, sludge disposal
    iii) Compare centralized vs. separate lagoon systems

  j) Evaluate/compare intangible factors
    i) Facility O&M capabilities
    ii) Odor generation and off-site nuisance conditions
    iii) Sustainability, nutrient recovery, TDS accumulation

  k) Summarize analysis in written report

3. **Lump Sum Contract Value For Basic Services –**

| | | |
|---|---|---|
| a) | Coordination of sample collections | $ 20,000.00 |
| b) | Geotech services - $25,000 first pond, $15,000 each subsequent pond | $ 55,000.00 |
| c) | Consulting engineering services | $144,000.00 |
| d) | Total | $219,000.00 |

4. **Supplemental Services –**
Supplementary Services are exclusive of the previously defined "Description of Basic Services" and will be accounted on an hourly basis.  These services will be billed according to Attachment CO for hourly effort.
   a) Contract administration services for the operations and contractors involved in removal of solid and liquid waste, including, but not limited to, directing third party vendors on limits of lagoon banks and bottoms, directing filtrate (liquid waste) to Broadway WWTP or other approved site, when necessary.  Specifically recognizing the cost drivers on the project are waste volumes and will consult with Kirk Newman prior to instructing third party vendors, committing Covance to costs that have a material impact on the project budget.

5. **Errors and Omissions –**
   a) It is agreed that all construction projects are "one of a kind" and thus, conditions will be encountered which will ultimately result in change orders to the project.  Change orders can result due to a variety of reasons.  One of the reasons for change orders can be an error or omission by the Architect.
   b) It is agreed that due to "one of a kind" nature of a project, the Architect cannot guarantee perfection in the plans and specifications for the project.  The standard of care exercised by the Architect must include a tolerance level for errors and omissions made by the Architect that are measured against the acceptable industry standard.
   c) Causes for change orders will be identified and categorized by cause.  The cause for each change order will be discussed by the Owner and Architect and placed in one of the following categories:
      i) Unknown Existing Conditions
      ii) Owner Requested Changes
      iii) Out of Sequence Work
      iv) Architect Omission
      v) Architect Error
   d) Change orders in the construction phase that result from acts that fall within category 1, 2, and 3 shall remain the responsibility of the Owner.
   e) Category 1, Unknown Existing Conditions, refers to conditions to an existing building or site.  It includes, but is not limited to, previous work hidden from view, poor soil conditions, hidden concrete, subsurface rock and other conditions that could not have been foreseen by the Architect through normal on-site visual inspection or from review of the as-built record documents provided by the Owner.
   f) Category 2, Owner Requested Changes, is specific requests by the Owner to meet new requirements and/or to revise the design after the constructing contractor(s) had acted upon the original design.
   g) Category 3, Out of Sequence Work, is items of work scope that were known and deliberately excluded from the Construction Documents.  Included in this category are change orders resulting from insufficient Owner criteria, changes in construction phasing and other conditions resulting in a change order after bid to include additional work purposely not included in the construction documents.
   h) If an Omission occurs (Category 4) and value is added to the project (Betterment), the cost of the added value shall be identified along with any premium paid resulting from the work being priced subsequent to the original construction bid.  The Owner shall be responsible for the value added, and the Architect shall be responsible for the premium amount.  If the amount of the premium

cannot be obtained or mutually agreed upon, the amount of the premium will be set at 50% of the total cost of the subsequent construction to include the omitted work.

i)   If an error in the design (Category 5) is discovered during construction requiring reconstruction and/or replacement to correct the error, and no value is added, the cost of the reconstruction and/or correction is the responsibility of the Architect.  Added value to the Owner shall be addressed as in Category 4 above.

j)   Where change orders may result from and are directly related to errors or omissions in Category 4 and 5, the Owner and Architect will mutually agree upon the effect, if any, on the subsequent construction.

**WHEREFORE**, the parties hereto execute this Agreement, dated April 1, 2015, for reference purposes, and on the actual dates indicated below.

FREESE & NICHOLS, INC.
800 N. Shoreline Blvd., Ste. 1600N
Corpus Christi, TX 78401

COVANCE LABORATORIES, INC.
3301 Kinsman Blvd.
Madison, WI 53704

| | | | |
|---|---|---|---|
| By: | | By: | |
| Name: | John New | Name: | John Fox |
| Title: | Vice President | Title: | Senior Manager Global Sourcing |
| Date: | June 4, 2015 | Date: | 05 · JUN · 2015 |

# Covance Inc.
## Master Services Agreement
### Attachment B

**REIMBURSABLE EXPENSES**

Reimbursable expenses are in addition to the standard fees and include expenses incurred by the Supplier and Supplier's employees and consultants in the interest of the project. Reimbursable expenses will be paid, at cost, according to the Travel Expense policy and Miscellaneous Expense policy described below.

Travel Expenses Policy: Covance is responsible for all related travel expenses associated with on-site visits, or visits to other entities on Covance's behalf.  All receipts for billed travel will be kept on file by the Supplier. Covance reserves the right to review any receipt on request to ensure compliance with the guidelines set below. In the event that an expense was outside this guideline then the Supplier agrees to pay the difference between the billed expense and the expected guideline cost. Travel expenses will abide by the following guidelines:
Airfare: Unrestricted coach class of service will be reserved. This will include travel between Supplier's designated employee's home city and the on-site requested location. In the event travel is not from their home city, when possible Covance will be notified and may approve this travel in advance. If the travel is between two client sites, the shared travel leg will be split between the two clients following their respective approvals.

Hotel: This will include two acceptable classes of accommodations: business class, defined as on-site dining facilities and business services, or extended stay, which is defined as in-room kitchen. If Covance has corporate rates available, then the Supplier will use these rates provided they meet the above criteria. Supplier reserves the right to choose accommodations. In the event Supplier waives Covance's recommended accommodations, and such accommodations meet approved guidelines, then the Supplier will assume the cost of the difference between the billed rate and the rate of the recommended hotel. It is Covance's responsibility to notify the Supplier that a special rate exists.

Transportation: Intermediate class cars will be reserved. Supplier will decline special equipment, additional insurance and any extra options. Supplier will make every effort to refuel prior to returning vehicles and will accept advance fuel purchase option if warranted based on time and mileage needed for engagement. In an attempt to maximize on-site time and in accordance with the availability of flight schedules, it may become necessary for Supplier to bypass local fueling options. If the Supplier chooses, a taxi may be substituted for a rental car if engagement situation warrants and no inconvenience to the Supplier occurs, provided taxi fares are less than or equal to the cost of a rental car for the same period. In the event the Supplier uses their own vehicle, Covance will reimburse fuel at the IRS approved rate.

Meals: An average of $45.00 per day can be expected for all meals. This may be combined with hotel room charges or individual receipts and will be reported together. In the event the Supplier pays for a

business meeting or entertainment expense with any associate of Covance present, then an authorized Covance signature shall be placed on the back of the submitted receipt.

Miscellaneous Expenses Policy:  The following guidelines will be used for miscellaneous expenses:

Allowable:   Airport Transportation (taxi or airport limousine) or airport parking
Laundry for stays of 5 days or more
Gasoline for rental car refueling
Business services: These include, but are not limited to, faxes, postal charges, or on-line charges.
Fees charged by hotel or airlines due to schedule changes
Travel agent fees

Not Allowed:   In room movies or mini–bar
Valet parking
Any retail purchase unless approved by Covance and authorized on submitted receipt.
Sight seeing or other entertainment activities

**WHEREFORE**, the parties hereto execute this Agreement, dated April 1, 2015, for reference purposes, and on the actual dates indicated below.

FREESE & NICHOLS, INC.
800 N. Shoreline Blvd., Ste. 1600N
Corpus Christi, TX 78401

COVANCE LABORATORIES, INC.
3301 Kinsman Blvd.
Madison, WI 53704

By:  _____
Name:  John New
Title:  Vice President
Date:  June 4, 2015

By:  _____
Name:  John Fox
Title:  Senior Manager Global Sourcing
Date:  05 . JUN . 2015

ATTACHMENT CO

## COMPENSATION

Compensation to FNI for the Basic Services described in Attachment A-Scope of Work shall be the lump sum of Two-Hundred Nineteen Thousand Dollars ($219,000). Compensation to FNI for Supplemtal Services in Attachment A-Scope of Work shall be invoiced on the basis of the Schedule of Charges.  If FNI sees the Scope of Services changing so that Additional Services are needed, including but not limited to those services described as Additional Services in Attachment A-Scope of Work, FNI will notify OWNER for OWNER's approval before proceeding.  Additional Services shall be computed based on the Schedule of Charges.

### Schedule of Charges:

| Position | Rate |
|---|---|
| Professional - 1 | 121 |
| Professional - 2 | 145 |
| Professional - 3 | 165 |
| Professional - 4 | 190 |
| Professional - 5 | 221 |
| Professional - 6 | 253 |
| Construction Manager - 1 | 96 |
| Construction Manager - 2 | 125 |
| Construction Manager - 3 | 146 |
| Construction Manager - 4 | 184 |
| CAD Technician/Designer - 1 | 103 |
| CAD Technician/Designer - 2 | 133 |
| CAD Technician/Designer - 3 | 164 |
| Corporate Project Support - 1 | 98 |
| Corporate Project Support - 2 | 117 |
| Corporate Project Support - 3 | 157 |
| Intern/ Coop | 60 |

### Rates for In-House Services

| Technology Charge | Bulk Printing and Reproduction | |
|---|---|---|
| $0.00 per hour | Black and White | $0.10 per copy |
| | Color | $0.25 per copy |
| **Travel** | Plot - Bond | $2.50 per plot |
| Standard IRS Rates | Plot - Color | $5.75 per plot |
| | Plot - Other | $5.00 per plot |
| | Binding | $0.25 per binding |

**OTHER DIRECT EXPENSES:**
Other direct expenses are reimbursed at actual cost times a multiplier of 1.0.  They include outside printing and reproduction expense, communication expense, travel, transportation and subsistence away from the FNI office and other miscellaneous expenses directly related to the work, including costs of laboratory analysis, test, and other work required to be done by independent persons other than staff members. For Resident Representative services performed by non-FNI employees and CAD services performed In-house by non-FNI employees where FNI provides workspace and equipment to perform such services, these services will be billed at cost times a multiplier of 2.0. This markup approximates the cost to FNI if an FNI employee was performing the same or similar services.

**These rates will be adjusted annually in February.**

3022015

FNI

OWNER